UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,

   Plaintiff,

                                  File No. **17-cr-20188**

-vs-

                                  Honorable **Victoria A. Roberts**

**VIOREL PRICOP (D-1)**,             Magistrate Judge **Mona K. Majzoub**

   Defendant.

| | |
|---|---|
| **ADRIANA DYDELL** | **JAMES C. HOWARTH (P15179)** |
| U.S. Attorney's Office | Attorney for Defendant Pricop |
| 211 W. Fort Street, Suite 2001 | 615 Griswold, Suite 820 |
| Detroit, Michigan 48226 | Detroit, Michigan 48226 |
| Phone: (313) 226-9125 | Phone: (313) 963-1455 |
| Email: adriana.dydell@usdoj.gov | Email: james-howarth@att.net |

## **SENTENCING MEMORANDUM**

### **I.     GENERAL BACKGROUND OF VIOREL PRICOP**

Defendant, Viorel Pricop, was born in Duda, Romania, a city not far from the Romanian capital, Bucharest, on February 1, 1958, while that country was still a totalitarian, puppet state, under the political control of the Union of Soviet Socialist Republics.  He and his three brothers, of which he is the eldest, were raised by both of their parents in a respectable home, but without many comforts and certainly no luxuries.  His brothers still live abroad in Europe.

Pricop graduated from high school in 1975 and went on to study mechanical engineering at university where he received a Bachelor's degree in 1981.  Two years

later he left Romania and resettled in Germany in order to obtain decent employment. In the late 80's (exact date unknown), Pricop was admitted into this country as a political refugee-alien, settling in Phoenix, Arizona.

Mr. Pricop has four children, the eldest is Ingrid who is twenty-three (23) and was born from a relationship with Florea Trascan; Richard (17), Ronald (15), and Robert (14) were born to his wife, Mihaela, who he married in 1998, one year after having become an American citizen by naturalization.[1] All of his children are, of course, native-born Americans. All of the children are aware of his circumstances and are supportive of their father. However, the three young sons are quasi-captives of the situation in Romania, because their mother, upon hearing of her indictment in the instant case, repatriated herself to Romania and took the children with her. The children remain in that country in the direst of straits, inasmuch as they have no ability to return to America and are left in Romania, where they not only do not speak the language, but have been effectively abandoned by their mother, who brought them there without her husband's consent. Viorel Pricop's greatest loss, in his mind, is the plight of his family. On a more positive note, his daughter, Ingrid, who resides in

---

[1] Here, there is a discrepancy between the date of citizenship in 1997, as provided by defendant to counsel and the Presentence Report (PSR), which notes that his "immigration records" note 2005 as his naturalization date (PSR, ¶65, p. 15).

Nevada, has been able to express her support for her father. See email of April 16, 2018, to counsel, attached as Exhibit A.

When Mr. Pricop first came to America, as noted earlier, he took any job, or jobs, he could get to support his family in Phoenix. Even with a college degree he was willing to work as a welder, clean business offices, and even drive a delivery truck for the local Kentucky Fried Chicken. Sadly, Pricop was injured in a serious automobile accident in Nevada, and still suffers physical impairments today as a result.

In 1996, two friends, John Barbulescee and Victor Bota, offered Viorel Pricop a trucking job in the Detroit area, and so he took that advantage and moved his family here. Shortly after arriving he bought a truck from Bota for $40,000.00 down and began working as a driver at Roth Trucking for two years. He then quit that job and went into business with Mr. Bota, as "Valentine Trucking". This relationship continued and prospered until Mr. Pricop went out on his own with Twin Twisters Trucking.[2] His new venture did remarkably well and the family prospered. They were living at 5119 St. Lawrence St. in Detroit, in the McGraw/Lonyo area on the west side, with the company office located in the family home.

---

[2] The company name was inspired by Pricop's first two sons, Richard and Ronald, who, he reports, ran around the family home like out of control wind storms.

Viorel's wife, Mihaela, was extremely active in the trucking business, serving as the corporate secretary and taking internet courses in income tax preparation. Mr. Pricop served not only as the titular head of the company but was also a full time, long-distance driver, who was gone from Michigan as much as he was in-state. During all this time he saved with considerable frugality, but almost always not in banks. (Note reference in his daughter's letter, Exhibit A, attached).

Pricop also worked with the truck brokering companies, making extra income, but at all times he took the advice of his wife and let her keep both the company books and do the taxes. This, in part, led to the criminal problems for which he has now pled guilty.

Just prior to his indictment he was in Quebec, Canada when he heard that his home and business had been raided by federal authorities with search warrants. He then discovered that Mihaela had fled the United States, with their three children, for her native Romania.[3] Mr. Pricop, when faced with the criminal charges, voluntarily

---

[3]Per the PSR she was in Canada when she fled. That is correct because the entire family was on vacation. Mrs. Pricop apparently has no intention of returning to the United States to face charges. According to information Mr. Pricop has received from friends and relatives, his wife has become involved with another man and has virtually abandoned the three teenaged children, who are on their own in a country foreign to them, faced with a language they never learned to speak while in this country.

-4-

surrendered to the police. He has been incarcerated, pretrial, in excess of two years, two months.

## II. THE CASE AGAINST DEFENDANT

The Indictment in this cause is made up of twenty-five counts:

Counts One to Three charge Interstate Transportation of Stolen Property, contrary to *18 U.S.C. §2314*, to which Mr. Pricop has pled guilty to Count Three.[4]

Counts Four through Eight charge Structuring, contrary to *18 U.S.C. §5324 (a)(1)*, but involve only co-defendant, Mihaela Pricop. Counts One and Two will be dismissed.

Counts Nine through Twenty charge Illegal Monetary Transactions, contrary to *18 U.S.C. §1957*, only two of which apply to Viorel Pricop. These counts are to be dismissed under the above plea agreement.

Counts Twenty-One through Twenty-Four charge Aiding and Abetting Preparation of a False Tax Return, contrary to *26 U.S.C. §7206(2)*, to which Mr. Pricop has pled guilty to Count Twenty-Four.[5]

---

[4] Counts One and Two will be dismissed at sentencing under a Rule 11 Plea Agreement.

[5] Counts Twenty-One through Twenty-Three will be dismissed under a Rule 11 Plea Agreement.

### A.     The Stolen Property Count.

As has been noted in the body of this Memorandum, Viorel Pricop was not only the president of Twin Twisters Trucking, but he served as one of their long-distance drivers.  Mr. Pricop has always maintained that it is a common practice, though admittedly a questionable one, for drivers to help one another out, by exchanging parts of loads while on the road, principally at truck stops, and even in some instances under cover of darkness.  These transactions can be quite legitimate, even when not sanctioned by the letter of the law.  When Viorel Pricop accepted Bose stereo equipment onto his truck in transit from New Mexico, he knew or certainly should have known that the property was almost certainly illegally obtained.  The location, the time of day, and the method of transfer would have made a reasonable person sufficiently suspicious that stolen goods were involved.  For this he has pled guilty.

### B.     The Income Tax Count.

Here, Mr. Pricop was presented with a serious dilemma during the plea bargaining process.  His financial situation presented a perfect storm for income tax problems.  He owned a very prosperous trucking company, at least on paper.  That company required a highly efficient bookkeeper and/or accountant – neither of which were ever utilized at Twin Twisters.  Viorel Pricop instead relied entirely on his wife,

Mihaela, to perform those crucial tasks. Ms. Pricop, who treated accurate finance for the family business with the same frivolous attitude that she employed in spending the family's money, had no formal training in either business accounting or income tax preparation.

It is a testament to the United States Attorney's Office and the expert accountant appointed by the Court that the rat's nest of Twin Twisters tax liability was ever resolved.

The government, in a sense, recognized the above problems when they indicted Viorel Pricop only as an aider and abettor in the income tax counts of the current case. Viorel Pricop did not compile the company records, nor did he calculate the necessary income tax returns. These were entirely the product of Mihaela Pricop, who has chosen to flee to Romania rather than to face the charges here. Her husband, Viorel, has been left holding the bag for her criminal tax calculations.

Mr. Pricop has again accepted responsibility, as well he must have, inasmuch as he signed the necessary tax forms, full-well knowing that he didn't even have the security of having H & R Block to fall back on. In this case the government's representatives, Adriana Dydell, Julie Beck and Karla Klein, spent countless hours organizing discovery for counsel, and patiently cooperated with defense CPA David

Hammel, and defense counsel to uncover and explain the nature of the charges, along with the significance of the voluminous discovery material.

In the end, the Rule 11 Plea Agreement that was hammered out probably made neither side particularly happy, but that is most probably the sign of a reasonable bargain for both of the parties.

### III.   SENTENCING FACTORS MANDATED FOR CONSIDERATION UNDER *18 U.S.C. §3553*.

#### A.   Nature and Circumstances of Offense, and History and Characteristics of Defendant.

The two offenses to which Viorel Pricop pled guilty to are discussed in Paragraph II, above, and are incorporated by reference.  Here, defendant would only add that these were not crimes of violence, nor did they concern illicit drugs.  The stolen properly offense and the income tax offense were economic crimes, for which Mr. Pricop will be required to make restitution.  While the distinction entitles him to no particular credit, nonetheless his actions do not demand a punitive sentence in this case.

As to Pricop's "history and characteristics", they would appear to deserve some manner of leniency in sentence.  It is true that in 1998 he was arrested in Ohio on a gun/knife charge (without violence).  For this he is assessed no criminal history points.  Also, six years ago he siphoned some gasoline into his truck from another

vehicle in Illinois, for which he is given one criminal history point, which becomes his total in this category.

His other "characteristics" seem to outweigh the above two lapses in judgment. Viorel Pricop rose from his birth as a poor comrade in a Communist, Iron Curtain country, to the status of a good husband to his wife and a loving provider to his four children, three of whom are now helpless in the foreign country of his birth. Certainly, his past behavior at least mollifies to some degree his current predicament.

**B.     The Need for the Sentence Imposed.**

Any decision on this point is subsumed into Paragraph C, below.

**C.     The Kinds of Sentences Available.**

For the sake of a reasonable resolution of Pricop's sentence, it can easily be conceded that a prison term, at least a short one, appears on the surface to be called for. Probation is neither called for nor necessary for the protection of society. Mr. Pricop is sixty years old and needs no rehabilitation or education in civic duties. Furthermore, he has paid his debt to society, simply by remaining in the government's custody for the past two years and two months. Given the crimes for which he has accepted responsibility and the amount of time spent in punitive custody, it is highly doubtful that the United States government will ask for or demand further incarceration.

However, almost certainly, he has not heard the last of economic repayment for his sins. Hopefully this Court will not be involved in that situation. Viorel Pricop, though born poor, did manage, in a land of opportunity, to prosper – far more for the benefit of his family than for himself. When he leaves prison, hopefully very soon, he must again be able to support himself and his children. With luck, the government will encourage, rather than thwart that goal.

In short, he maintains that he has been punished enough so far, and a sentence of credit-for-time-served is appropriate.

**D.    The Established Sentencing Range.**

The Rule 11 Sentence Agreement, signed by the parties to this cause, established an Offense Level Total of sixteen points, which leads to a guideline range of twenty-one to twenty-seven months of incarceration. The Presentence Report adopts those figures on page 16, paragraph 78.

Here, it might be noted that the additional sentence imposition of supervised release is suggested by the Probation Department. Defendant believes that neither criminal statute for which he now stands convicted (*18 U.S.C. §2314* and *26 U.S.C. §7206(2)*) requires supervised release. Further, extraordinary circumstances exist which render such supervision counter-productive to Mr. Pricop's final rehabilitation. At this moment, the most important driving factor in his life is reuniting with his three

children in Romania. To leave this country while on supervised release is likely to be impossible. If Pricop has done all his time, and also must deal with restitution, is it fair to also preclude the possibility, after two-and-one-half years, of seeing his children again? One hopes the answer is "no".

### E. Any Pertinent Policy Statement.

It appears that there are no such statements.

### F. The Need to Avoid Unwarranted Sentence Discrepancies.

There is only one co-defendant in this matter, defendant's wife, Mihaela. Mrs. Pricop was charged, in the operative Indictment, with more offenses than was Mr. Pricop. Counts Four through Seven and Count Eight all charge Structuring, and involve major financial institutions such as J.P. Moran Chase Bank, Comerica Bank and Bank of America. The amounts charged are said to be in excess of $200,000.00. Only Mihaela Pricop is charged in these counts.

Whereas it isn't the government's fault that Mrs. Pricop will likely go unpunished for these crimes, nevertheless, any sentence given to Mr. Pricop will cause an "unwarranted sentence discrepancy" among similarly situated co-defendants.

Inclusion by Congress of this consideration simply militates for leniency for Viorel Pricop and constitutes an argument for immediate release.

### G. The Need to Provide Restitution.

The parties have already stipulated to restitution, and the government has set an amount based on their figures. This amount, also by agreement, will be offset by the amount the government receives through forfeiture proceedings. Virtually by operation of law, procedures to put these agreements into effect will occur after the judgment of sentence, and need not be further discussed here.

### IV. CONCLUSION AND RELIEF REQUESTED

This case has been before this Court for a long period of time. Some of the fault must of course fall on the defendant, himself for the delays, inasmuch as he has changed counsel at least twice and failed several times at eleventh hour plea proffers. However, just as clearly, is the person who has suffered most from the delays. Viorel Pricop has been confined at FDC Milan for well-over two years, awaiting a fair resolution of the charges in the Indictment, many of which were voluntarily dismissed by the government along the way.

He is truly a shattered man and is currently suffering from severe bouts of depression. He has lost his business, Twin Twisters Trucking. He has lost his wife. He has lost his home. Most importantly to him, he has lost his children. He has spent twenty-six months in a prison cell and has little to return to whenever he is released, except government bill collectors.

Viorel Pricop is a fundamentally decent man who has come to a sad end, only partially by his own doing. He is, naturally, not without responsibility, but arguably he has already paid more than he deserves.

Defendant respectfully asks that he be ordered immediately released on a sentence of credit for time served, with no fines and no supervised release.

                                    Respectfully submitted,
/s/ James C. Howarth
**JAMES C. HOWARTH (P15179)**
Attorney for Defendant Pricop
615 Griswold, Suite 820
Detroit, Michigan 48226
Phone: (313) 963-1455
E-Mail: james-howarth@att.net

Dated: June 15, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**,

    Plaintiff,

                                           File No. **17-cr-20188**

-vs-

                                           Honorable **Victoria A. Roberts**

**VIOREL PRICOP (D-1)**,              Magistrate Judge **Mona K. Majzoub**

    Defendant.

_____

## **CERTIFICATE OF SERVICE**

    I, **JAMES C. HOWARTH**, hereby certify that on the **15th** day of **June 2018**, I electronically filed **Sentencing Memorandum** with the Clerk of the Court using the ECF system which will send notification of such filing to the following: **Honorable Victoria A. Roberts and AUSA Adriana Dydell and AUSA Julie Beck**.

                                                  Respectfully submitted,
                                                  /s/ *James C. Howarth*
                                                  **JAMES C. HOWARTH (P15179)**
                                                  Attorney for Defendant Pricop
                                                  615 Griswold, Suite 820
                                                  Detroit, Michigan 48226
                                                  Phone: (313) 963-1455
                                                  E-Mail: james-howarth@att.net

Dated: June 15, 2018