UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Case No. 17-cr-20188

v.        Hon. Victoria A. Roberts

D-1  VIOREL PRICOP

        Defendant.
_____/

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Viorel Pricop is a victim of his own greed. When Defendant's legitimate income no longer satisfied him, Defendant made the conscious decision to supplement his earnings through illegal activity. Defendant's choice to engage in illegal conduct was his alone. For the reasons stated below, the government recommends a sentence of imprisonment of 27 months, followed by a term of supervised release, and restitution of $501,956.00.

I.    **FACTUAL AND PROCEDURAL HISTORY**

Defendant Viorel Pricop owned and operated Twin Twisters Trucking and Good Time, LLC. (PSR ¶ 73). In or about 2013, IRS-CI opened an investigation into Defendant and his businesses. (PSR ¶ 23). As part of its investigation, IRS-CI reviewed numerous financial records, including, but not limited to, FinCEN filings,

bank and credit card account records, and tax returns filed by Defendant and his wife Mihaela for income tax years 2010 through 2013. (PSR ¶ 24).

Unappreciated at the time, IRS-CI's investigation overlapped with a 2014 private insurance investigation into merchandise stolen from tractor-trailers along Interstate 40 in New Mexico and Arizona. (PSR ¶ 11). As part of this investigation, investigators deployed several bait trailers equipped with cameras and merchandise. (PSR ¶¶ 12-14). During a breach of a bait trailer in August 2014, a camera[1] captured an individual, who appeared to be defendant, enter the trailer in the dark, holding a flashlight in his mouth, and analyzing the contents of the trailer before fleeing. (*see* PSR ¶ 12). In February 2015, a bait trailer in Moriarty, New Mexico was breached, likely with a cutting device, and an individual removed several pallets of Bose sound systems, including items containing tracking devices. (PSR ¶ 14). Using the embedded tracking devices, insurance investigators, in cooperation with local law enforcement, tracked the Bose merchandise to a storage facility in Michigan. (PSR ¶ 15).

Michigan State Police (MSP) responded to the storage facility, and observed Defendant, his tractor-trailer, and another individual outside Defendant's storage unit. (PSR ¶ 16). A search of Defendant's tractor-trailer and storage unit revealed the stolen Bose stereo equipment, along with several stolen Samsung televisions.

---

[1] A copy of the recording is available for review.

(PSR ¶ 16). Subsequent search warrants executed at Defendant's home and pole barn revealed additional stolen merchandise. (PSR ¶ 21).

Defendant initially told MSP that all of his cargo was legitimate and that he possessed a bill of lading for the Bose sound systems. (PSR ¶ 17). When questioned about the authenticity of the purported bill of lading, Defendant changed his story and admitted that he picked up the stolen items from an individual in New Mexico and transported them to Michigan. (PSR ¶ 18). Defendant admitted that he engaged in this activity once every two or three weeks and that he was paid approximately $3,000 per trip. (PSR ¶ 18). On February 18, 2015, Defendant arranged to meet with MSP at the Brighton post that afternoon. (PSR ¶ 20). Defendant never appeared for the meeting; according to defendant, he was "on vacation." (R. 48, p. ID 280).

Defendant's sentencing memorandum minimizes and makes excuses for his illegal conduct, suggesting that his possession of stolen property was "quite legitimate" and explaining that drivers exchange parts of loads on the road, even "under cover of darkness." (R. 50, p. ID 299). Under the circumstances, and in light of Defendant's own admissions to transporting stolen property, these explanations are illogical.

Ultimately, the analysis conducted by IRS-CI in its parallel criminal investigation revealed the fruits of Defendant's illegal activity. Defendant

underreported his total income on his federal income tax returns for the 2010 through 2013 income tax years and failed to file a tax return for the 2014 tax year. Specifically, Defendant reported his net income as follows: $59,289 (2010), $61,649 (2011), $57,308 (2012), and $51,187 (2013) when his actual income was significantly higher. (*see* PSR ¶ 73). As a result, Defendant owes at least $501,956.00 in taxes. (PSR ¶ 26; R. 46, p. ID 240).

Defendant knew that he was not reporting all of his income on his tax returns. His lifestyle establishes this. One need only look at the long list of lavish purchases made by Defendant and his wife during the relevant tax years. For example, in 2012 Defendant identified net income of $57,308 on his federal income tax return. During the same tax year, Defendant's wife deposited $113,153 cash into a Ferrari bank account for the purchase of a Ferrari. (R. 21, p. ID 104). Agents found this Ferrari parked at Defendant's home in February 2015. (PSR ¶ 21). Similarly, in 2013, Defendant identified net income of $51,187 on his federal income tax return. However, during the same tax year Defendant and his wife deposited $200,000 cash and purchased a $197,000 cashier's check, which they used to purchase real property located near their home in Milford, Michigan. (R. 21, p. ID 105). Defendant did not file taxes for the 2014 tax year. (R. 21, p. ID 107). However, during 2014, Defendant's wife used significant amounts of currency to purchase a Mercedes-Benz. (R. 21, p. ID 105). Agents subsequently

seized this Mercedes. (PSR ¶ 21). These are but a few of the numerous examples of Defendant's lavish spending. (*see also* PSR ¶ 21).

Defendant knew his total income was higher than reported—the proceeds of his criminal activity were all around him—in his home, in his garage, and at a recently purchased nearby home. Despite this, Defendant attempts to place the blame for his criminal tax returns on his wife Mihaela and her poor accounting skills.[2] However, Defendant admitted at his Rule 11 hearing that he assisted his wife to prepare a joint income tax return that reported less income than he actually received. Defendant's sentencing memo also suggests that he does not trust banks; and therefore, liked to save his money at home. (R. 50-2, p. ID 309). The IRS-CI agent's review and analysis of this case suggests otherwise. As part or her analysis, the IRS-CI agent reviewed records from seven different bank accounts held by Defendant, his wife, his children, and his businesses. (*see* PSR ¶ 24).

On March 28, 2018, Defendant pleaded guilty to Counts Three and Twenty-Four of the twenty-five count Indictment, which charges him with interstate transportation of stolen property in violation of Title 18, United States Code, Section 2314 and aiding or assisting the filing of a false income tax return, in

---

[2] Defendant implies that he was charged as an aider and abettor because he was less culpable than his wife, Mihaela. (R. 50, p. ID 300). This is not the case. The United States charged both Defendant and Mihaela Pricop with violation of 26 U.S.C. § 7206(2) because both of them were equally culpable for the offense.

violation of Title 26, United States Code, section 7206(2). The Rule 11 Agreement anticipated a United States Sentencing Guidelines' (the "Guidelines") range of 21-27 months, based on a total offense level of sixteen (after acceptance of responsibility) and a Criminal History Category I. (R. 46, p. ID 237, 254).

## II.    SENTENCING GUIDELINES CALCULATION AND RELEVANT § 3553(a) FACTORS

Title 18, United States Code, Section 3553(a) provides the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including the seriousness of the offense, deterrence, and rehabilitation); (3) the kinds of sentences legally available; (4) the Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. The most relevant factors to Defendant's case are discussed here.

### A.    **The Advisory Guidelines' Range**

Although advisory, the Guidelines remain an important factor under section 3553(a) when determining an appropriate sentence. As the Supreme Court noted in *Rita v. United States,* 551 U.S. 338, 350 (2007), "it is fair to assume that the

Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 350.

In the Rule 11 Agreement, the parties calculated the Guidelines' range at 21-27 months. The Guidelines assign a base offense level of nineteen to the offense at issue (Guidelines §§2T1.4, 2T4.1). A three-level reduction for acceptance of responsibility results in a total offense level of sixteen. (Guidelines § 3E1.1.) Defendant has a Criminal History Category I. This results in the agreed upon 21-27 month Guidelines' range. (R. 46, p. ID 237, 254). This is consistent with the Probation Officer's PSR, which calculated the same Guidelines' Range. (PSR ¶ 77). This is the appropriate starting point from which to consider Defendant's sentence.

### B. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant - 18 U.S.C. § 3553(a)(1).

Both of Defendant's offenses resulted from greed. Defendant admittedly stole merchandise from another truck and transported that merchandise to his own storage facility. By his own admissions, Defendant earned approximately $3,000 every two to three weeks for transporting stolen merchandise. In addition, Defendant underreported, or failed to file, income taxes during five consecutive tax years. The resulting $501,956 in tax loss is significant. In fact, for the average American taxpayer, a half million dollars represents years of hard earned income.

The Government does not dispute that Defendant came to the United States

and worked hard to achieve success for himself, and later, his family. Nor does the Government dispute that Defendant earned legitimate income from Twin Twisters Trucking. Despite this, Defendant decided that what he had accomplished was not enough, and he engaged in the conduct at issue in this case. Looking at the facts as a whole, Defendant's actions were not an isolated lapse in judgment; rather, they constituted a pattern of conduct that spanned many years and resulted in a lavish lifestyle only dreamed of by the average hard working American. For these reasons, a sentence at the top of the Guidelines' range is appropriate.

In addition, any sentence imposed should include a term of supervised release. Defendant fled the United States in February 2015 and has been in custody since he attempted to return in April 2016. By his own statements, Defendant has lost his business and is separated from his family. Without his business and family to support him, the transition back to civilian life will be difficult. A period of supervised release will help ease this transition and could provide Defendant with the additional resources he needs to make the transition. (*See* PSR ¶ 99).

### C. Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment - 18 U.S.C. §§ 3553(a)(2)(A).

Both of Defendant's offenses have real consequences, not only to the direct victims of the offenses, but also to society as a whole. Property crimes, like the theft that occurred here, not only result in the direct economic losses immediately suffered by the victims, but ultimately translate into increased overall costs of

doing business and higher prices for consumers. Similarly, willfully cheating on your federal income tax return not only denies revenue to the United States, but also discourages voluntary compliance by other citizens. In short, for our system of taxation to work, individual taxpayers must honestly report their income to the government. The system will fail if taxpayers do not have confidence that their fellow citizens are also paying their fair share.

**D.    The Sentence Imposed Must Afford Adequate Deterrence to Criminal Conduct - 18 U.S.C. § 3553(a)(2)(B).**

Deterrence is an important consideration when fashioning a sentence to persuade Defendant from continuing to engage in criminal behavior and to discourage others from engaging in the same activity. *United States v. Phinazee*, 515 F.3d 511 (6th Cir. 2008); *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006) (sentencing in the federal system has long contemplated the ability to provide both specific and general deterrence). Defendant's age and short criminal record suggest that a custodial sentence could deter future criminal conduct. In addition, general deterrence occupies a particularly important role in sentencing in both theft cases and criminal tax cases.

The Guidelines Manual recognizes general deterrence in relation to tax cases, and states that "[b]ecause of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines."

9

(Guidelines, § 2T1.1, Introductory Commentary). As described above, our nation's tax system depends on voluntary and honest compliance. Imposing a sentence of imprisonment on individuals who willfully cheat on their taxes promotes voluntary compliance by making it clear to the public that there are consequences for filing false tax returns. In order to deter individuals from cheating on their taxes, a convicted individual must be punished, so that others do not decide that the rewards of violating the law exceed the possible punishment. The same rationale applies to theft offenses.

In sum, the sentence imposed by the Court should serve not only as a deterrent to Defendant, but as a deterrent to anyone who contemplates stealing or lying on a tax return. In light of these considerations, a sentence of imprisonment at the top of the Guidelines' range is appropriate.

### III. CONCLUSION

The section 3553 factors combined with the advisory Guidelines provide considerations that assist the Court in determining an appropriate sentence. Here, the Court should consider the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide both general and specific deterrence. In this instance, these factors weigh in favor of a sentence of 27 months, which is at the top of the Guidelines' range. In addition, the Government recommends that the Court impose

a term of supervised release and order Defendant to pay restitution to the United States Treasury in the agreed amount of $501,956.

                                      MATTHEW SCHNEIDER
                                      United States Attorney

                                      <u>s/Adriana N. Dydell</u>
                                      ADRIANA DYDELL
                                      Assistant U.S. Attorney
                                      211 W. Fort St., Ste. 2001
                                      Detroit, MI 48226
                                      (313) 226-9125
                                      adriana.dydell@usdoj.gov
                                      [CA Bar No 239516]

Dated: June 22, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2018, the Government's Sentencing Memorandum was electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants, including:

> James Howarth, Esq.
> james-howarth@att.net

>> s/Adriana N. Dydell
>> ADRIANA N. DYDELL
>> Assistant United States Attorney
>> 211 West Fort Street, Suite 2001
>> Detroit, Michigan 48226-3211
>> (313) 226-9125
>> adriana.dydell@usdoj.gov